916 A.2d 541 (2007)
COMMONWEALTH of Pennsylvania, OFFICE OF ADMINISTRATION
v.
PENNSYLVANIA LABOR RELATIONS BOARD and Pennsylvania State Corrections Officers Association, Intervenor.
Appeal of Pennsylvania Labor Relations Board.
Supreme Court of Pennsylvania.
Argued March 2, 2006.
Decided February 20, 2007.
*543 Warren R. Mowery, Esq., James L. Crawford, Esq., Harrisburg, for Pennsylvania Labor Relations Board.
Frank A. Fisher, Esq., Keith Herbster, Esq., Harrisburg, for Office of Administration.
Stephen J. Holroyd, Esq., Thomas W. Jennings, Esq., Philadelphia, for Pennsylvania State Corrections Officers Association.
BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

OPINION
Chief Justice CAPPY.
This appeal by allowance concerns the contours of an employee's Weingarten right[1] under the Pennsylvania Public Employe Relations Act (PERA),[2] that is, the right to be accompanied by a union representative during an interview in which the employee reasonably fears that discipline may be imposed by the employer. Specifically, we are asked to consider whether a public employee has the right to be accompanied by a union representative of his or her choosing during such an investigatory interview. For the reasons that follow, we conclude that the right of accompaniment during an investigatory interview includes the employee's choice of union representativewhen the union representative is reasonably available and there are no extenuating circumstances. Thus, for the reasons stated herein, we reverse the order of the Commonwealth Court.
The facts of this appeal are as follows. Donald Vogel worked for the Commonwealth of Pennsylvania (the Commonwealth) as a State Correctional Officer. On November 13, 2001, Officer Vogel was instructed to report to his immediate supervisor, Captain Soroko[3] for counseling. Before he entered Captain Soroko's office, Officer Vogel met with Officer Paul Lennert concerning the reason for his meeting with Captain Soroko. Officer Lennert was a member of the Pennsylvania State Corrections Officers Association's (the Association) local executive board. When he entered Captain Soroko's office, Officer Vogel requested to be represented by Officer Craig Panko instead of Officer Lennert. Officer Vogel knew that Officer Panko had been counseled for missing roll calls and that Captain Soroko referred to Officer Vogel's roll call record while counseling Officer Panko. Furthermore, at the time of the counseling session, Officer Panko was a union steward; Officer Lennert did not hold such a position.
Captain Soroko denied Officer Vogel's request. Officer Lennert offered to relieve Officer Panko so that he could attend the counseling session. Captain Soroko rejected Officer Lennert's offer and insisted that Officer Lennert stay to represent Officer Vogel during the session.
During the counseling session, Captain Soroko accused Officer Vogel of being late for roll call fifteen times and Officer Vogel responded that there was no truth to these allegations. At the end of the meeting, Captain Soroko indicated that he possessed the records to prove that Officer Vogel had been late for roll call and informed Officer Vogel that he would "get *544 [Captain Soroko's] decision later." Ultimately, Officer Vogel was not disciplined as a result of the alleged missed roll calls.
Thereafter, the Association filed a charge of unfair labor practices with the Pennsylvania Labor Relations Board (the Board or PLRB). The Association alleged that by refusing to permit Officer Vogel to have Officer Panko represent him during the counseling session, the Commonwealth violated Section 1201(a)(1) and (5) of PERA.[4]
The Board issued a complaint and a hearing was held on May 17, 2002 before a hearing examiner. On June 26, 2002, the hearing examiner issued a Proposed Decision and Order dismissing the charge of unfair labor practices. The hearing examiner determined that the Union had failed to establish that Officer Panko was readily available and did not show that Officer Vogel was entitled to Officer Panko's representation. Thus, the hearing examiner dismissed the charges filed pursuant to Section 1201(a)(1). The hearing examiner also dismissed the Association's claim under Section 1201(a)(5) finding that the Association's collective bargaining rights were not violated. The Association filed exceptions to the hearing examiner's decision and order.
On January 28, 2003, the Board rendered a Final Order in which the Board rejected the findings of the hearing examiner and concluded that the Commonwealth had committed an unfair labor practice by failing to provide Officer Vogel with his choice of union representative. Specifically, the Board first looked to Captain Soroko's accusation of past misconduct which could lead to the imposition of discipline coupled with his lack of decision regarding whether to impose discipline. This led the Board to conclude that Officer Vogel was subjected to an investigatory interview which implicated Officer Vogel's Weingarten rights. The Board then questioned whether an employee, in exercising his Weingarten rights, has the right to choose from available representatives in the work place. The Board concluded that an employee is entitled to an available representative of his or her choosing, absent extenuating circumstances. Based upon Officer Lennert's offer to permit Officer Panko to attend the interview, the Board opined that Officer Panko was present and available to attend the counseling session with Captain Soroko and Officer Vogel. Therefore, the Board determined that the Commonwealth had violated Section 1201(a)(1) of PERA. The Board, however, rejected the Association's contention that the Commonwealth had violated its bargaining rights pursuant to Section 1201(a)(5), concluding that a Weingarten right was a right of the employee and not the Association. The Board ordered the Commonwealth to cease and desist from interfering with the employees' rights under PERA and to post a copy of the Board's Final Order. The Commonwealth appealed the Board's Final Order to the Commonwealth Court.
The Commonwealth Court agreed with the Board that Officer Vogel's counseling session constituted an investigatory interview *545 implicating Officer Vogel's Weingarten rights. This conclusion was based upon the court's determination that not only did Captain Soroko note the potential disciplinary action to be taken as a result of the session, but also he explained that he was deferring a decision regarding discipline until a later time.
The Commonwealth Court, however, rejected the Board's conclusion that during an investigatory interview, an employee may have his or her choice of representative absent extenuating circumstances. The court found that decisions arising from the National Labor Relations Act (NLRA),[5] such as Weingarten, were not necessarily applicable to issues under PERA. Specifically, the court reasoned that decisions under PERA impact not only public employers and public unions, but also the public; this is unlike decisions rendered under the NLRA which impact only private employers and private unions. Taking a circumscribed view of the nature of rights under PERA, the court went on to instruct that, "Nothing in PERA gives the Board the power to vest in any particular employee any particular collective bargaining rights because PERA is a collective bargaining statute vesting all rights in a union, and only it and no individual employee has any individual collective bargaining right vis-à-vis the employer." Office of Administration v. PLRB, 848 A.2d 1063, 1068 (Pa.Cmwlth.2004).
While acknowledging that the Board premised its decision on a section in PERA that was similar to the section in the NLRA on which the decision in Weingarten was based, the Commonwealth Court nevertheless opined that "those sections and those rights have nothing to do with the rights of individual employees, but only the rights of the union." Id. The court continued that, "The Weingarten rule rests solely on the provisions of PERA that involve collective bargaining rights giving the union the right to be present to protect its interest; however, nothing in Weingarten confers any individual rights." Id. Indeed, the court found that recognizing an employee's choice of representative would undermine collective bargaining between unions and employers. Id. 848 A.2d at 1070. The Commonwealth Court's rejection of the adoption of the federal standard was supported by the reasoning that a grievance and arbitration procedure is mandated under PERA but not under the NLRA. Related thereto, the Court characterized management's right to punish an employee as inherent, and offered that because the right to discipline is a managerial prerogative, all that is required under Weingarten is that a union representative be present to protect the union's rights for future grievance-arbitration proceedings. According to the Commonwealth Court, the employer is under no obligation to honor an employee's request for a particular union representative unless the collective bargaining agreement contains such a requirement. As the relevant collective bargaining agreement did not require the employer to honor such a request, the choice of representative was not available to Officer Vogel. Id. 848 A.2d at 1069. Thus, the Commonwealth Court reversed the Board's decision.
Senior Judge Joseph McCloskey authored a dissent. He offered that even assuming arguendo that the right of representation belonged to the union, the majority's approach permitted the employer to select Officer Vogel's representative. This was because even after Officer Lennert offered to relieve Officer Panko from duty to represent Officer Vogel, Captain Soroko rejected the offer and insisted that Officer *546 Lennert represent Officer Vogel. Therefore, Judge McCloskey concluded that "the right to representation, where the adversarial party has the power to choose who will represent the other party, is not a right to representation at all." Id. at 1071.
Our Court granted the Board's petition for allowance of appeal to review the Commonwealth Court's articulation of the nature of employee and union rights, in general, under PERA, the nature of the Weingarten right under PERA, and whether an employee's Weingarten right includes the right to choose the union representative who will accompany him or her during an investigatory interview. We will begin with an examination of the United States Supreme Court's decision in Weingarten, follow with an analysis of rights under PERA, and finally conclude with consideration of the breadth of an employee's Weingarten right under PERA.
In 1975, the United States Supreme Court rendered its seminal decision in Weingarten and therein determined that under the NLRA, a union employee enjoys the right to have a union representative join him or her during an investigatory interview, which is an interview in which the employee reasonably believes that an investigation may result in discipline. Weingarten, 420 U.S. at 260, 95 S.Ct. 959. This right of accompaniment is now commonly known as an employee's Weingarten right. The Court reasoned that an employer's refusal of such representation during an investigatory interview constituted an unfair labor practice as it interfered with the individual employee's rights as provided for in Section 7 of the NLRA. 29 U.S.C. § 157. Section 7 is the core section of the NLRA and provides in relevant part:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.
29 U.S.C. § 157.
The High Court was clear in identifying the basis for the Weingarten right: "[T]he action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of Section 7 that `[employees] shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection.'" Weingarten, 420 U.S. at 260, 95 S.Ct. 959 (citation omitted). The Court opined that the right to representation is found within the employee's Section 7 right "even though the employee alone may have an immediate stake in the outcome; he seeks `aid or protection' against a perceived threat to his employment security." Id. Stressing the dual nature of the NLRA's protections, the Court offered that the presence of a union representative during an investigatory interview not only protected "the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly." Id. at 260-61, 95 S.Ct. 959. Thus, the Supreme Court found the Weingarten right to be rooted in Section 7 of the NLRA, specifically in the right of an employee to engage in concerted activity for mutual aid and protection, and that the right was an individual right that benefited the entire bargaining unit.
The Court also spoke to the policy reasons for the recognition of an employee's right to have a union representative during an investigatory interview. According to the Court, an employee's Section 7 right to *547 have union representation during an investigatory interview benefited both employee and employer. Holding out the situation of a lone employee in an investigatory interview, the Court offered that such an employee, "confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating circumstances." Id. at 262-63, 95 S.Ct. 959. "A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview." Id. at 263, 95 S.Ct. 959. Importantly, the Court foresaw that although an employee enjoys representation during a formal grievance and arbitration process, the value of such representation at that point is diminished, as after the filing of a formal grievance, it becomes more difficult for the employee to vindicate himself or herself and an employer may be "more concerned with justifying his actions rather than re-examining them." Id. at 263-64, 95 S.Ct. 959. The Court cautioned, however, that the exercise of an employee's right of representation may not interfere with "legitimate employer prerogatives." Id. at 258, 95 S.Ct. 959.
Five years after the United States Supreme Court's decision in Weingarten, the Board adopted the right to union representation during an investigatory interview. Specifically, in Township of Shaler, 11 PPER ¶ 11347 (Nisi Decision and Order, 1980), the Board found that the rights granted to public employees pursuant to the Pennsylvania Labor Relations Act[6] and Act 111[7] included the Weingarten right. A year later, the Board recognized the Weingarten right for purposes of PERA. Conneaut School District, 12 PPER ¶ 12155 (Final Order, 1981). While our Court has not had the opportunity to speak to the validity of an employee's Weingarten right under PERA, and no party questions such a right in this appeal, our Commonwealth Court has for over twenty years embraced the right of an employee to representation pursuant to Weingarten for purposes of Section 401 of PERA. See, e.g., AFSCME v. PLRB, 100 Pa.Cmwlth. 50, 514 A.2d 255 (1986).
As noted above, in deciding the scope of an employee's Weingarten right in Pennsylvania, the Commonwealth Court made certain sweeping statements regarding the nature of rights bestowed by PERA. In sum, the Commonwealth Court strongly suggested that all rights under PERA, including a Weingarten right, are vested in the union, that employee rights are derivative of the union's rights, and that individual employees have no rights with respect to their employer under PERA. The Commonwealth Court's characterization of PERA is of significance to employees, unions, and employers alike, and critical to the resolution of the specific question we confront here. Therefore, we will briefly consider the nature of rights, in general, under PERA.[8]
When interpreting a statute, we are guided by the Statutory Construction Act. 1 Pa.C.S. § 1901 et seq. The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature. 1 Pa.C.S. § 1921(a). The best indication of *548 legislative intent is the language used in the statute. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921(b). We look beyond the language employed by the General Assembly only when the words are not explicit. 1 Pa.C.S. § 1921(c). When the words of a statute are not explicit, we may discern the Legislature's intent by considering, inter alia, various enumerated factors as set forth in 1 Pa.C.S. § 1921(c).
Virtually identical to Section 7 of the NLRA, the heart of PERA is Section 401, entitled "Employe rights," which recognizes certain rights of public employees and states in relevant part:
It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection. . . .
43 P.S. § 1101.401 (emphasis supplied). Furthermore, "public employe" means "any individual employed by a public employer. . . ." 43 P.S. § 1101.301 (emphasis supplied).
Thus, by the plain language of the statute, all rights under PERA are not vested in the union, but rather, it is the individual public employee who possesses certain rights, including the right to organize, form a union, and most importantly for this appeal, to "engage in lawful concerted activities for . . . mutual aid and protection." 43 P.S. § 1101.401.
Case law in this Commonwealth interpreting PERA has come to the same conclusion. Specifically, our Court and the Commonwealth Court have recognized in various situations that an individual employee possesses rights under PERA. See, e.g., Hollinger v. Department of Public Welfare, 469 Pa. 358, 365 A.2d 1245 (1976)(recognizing right of public employee under Section 401 to refrain from joining union and paying dues); PLRB v. Zelem, 459 Pa. 399, 329 A.2d 477 (1974)(finding that individual employee had claim against union and employer for violating rights under Section 401); PLRB v. Heller, 404 Pa. 177, 171 A.2d 157 (1961)(upholding individual employee's contention that employer terminated employee for engaging in union activities); Pennsylvania Emergency Management Agency v. PLRB, 768 A.2d 1201, 1205 (Pa.Cmwlth.2001)(opining in an unfair labor practice charge involving the Weingarten right that the individual employee was the "real party in interest"); Giovinazzo v. PLRB, 52 Pa.Cmwlth. 426, 415 A.2d 1267 (1980)(sustaining individual employee's charge that he was terminated for attempting to organize a union); PLRB v. Rizzo, 21 Pa.Cmwlth. 216, 344 A.2d 744 (1975)(determining that individual's protests regarding working conditions were protected activities under Section 401).[9]
Therefore, based upon the language employed by the General Assembly and our Commonwealth's decisional law interpreting PERA, we believe that the Commonwealth Court simply painted with too broad a brush in its description of the nature of rights granted under PERA. We take this opportunity to clarify that contrary to the Commonwealth Court's understanding that individual employees have no *549 rights under PERA other than derivative rights from the union, and that all rights under PERA are vested exclusively in unions, Section 401 of PERA grants individual employees certain rights, including the right to engage in mutual aid and protection, which do not necessarily implicate bargaining rights.[10]
As the Commonwealth Court specifically spoke to the nature of Weingarten rights under PERA, we too must consider whether such a right is employee-based to answer the more specific question concerning choice of representative. As described more fully above, we find it clear that Weingarten rights were grounded in the NLRA's Section 7 which protects the right of an individual employee to engage in concerted activities for mutual aid and protection. Like Section 7, PERA's Section 401 guarantees public employees the right to engage in concerted activities for mutual aid and protection. The Board has found the Weingarten right under PERA to be an individual employee right of union representative accompaniment during an investigative interview, separate and apart from the employees' collective right to engage in collective bargaining. The Commonwealth Court has affirmed this approach. See Commonwealth of Pennsylvania v. PLRB, 826 A.2d 932 (Pa. Cmwlth.2003); AFSCME; supra. Therefore, we conclude that contrary to the Commonwealth Court's decision in this appeal, under PERA the Weingarten right of accompaniment is based upon the right of an individual employee to engage in mutual aid and protection.
Having clarified the nature of the rights of employees under PERA, and also more specifically the nature of the Weingarten right, we now resolve the issue of whether a public employee has a choice of union representative in exercising his or her Weingarten rights under PERA. The Board contends that an employee's right to be accompanied by a representative during an investigatory interview includes a right to choose his or her union representative. Furthermore, the Board vigorously asserts that an employer should not be able to make this designation of representation as occurred in this matter. Thus, according to the Board, the Commonwealth Court erred in concluding that the Commonwealth, as employer, was able to choose Officer Vogel's representative for the investigatory interview. The Commonwealth counters that the employee should not be able to designate his or her choice of union representative, but that the Weingarten right merely requires the union's presence at the interview.
While the issue of choice of representative for purposes of exercising an employee's Weingarten right is an issue of first impression for this Court and the terms of PERA do not explicitly speak to this issue, we are not left without guidance.[11] Pursuant to the Statutory Construction Act, when the language used by the General Assembly is not explicit other *550 factors may be considered in ascertaining the intention of the Legislature, including administrative interpretations of the statute. 1 Pa.C.S. § 1921(c)(8). Related thereto, in the context of interpreting our Commonwealth's labor laws, our Court has not hesitated to consider, and to follow, federal interpretation of the NLRA due to the similarity between the federal labor law and our own laws dealing with labor relations. Appeal of Cumberland Valley School District, 483 Pa. 134, 394 A.2d 946, 950 (1978); PLRB v. Mars Area School District, 480 Pa. 295, 389 A.2d 1073, 1076 (1978). Furthermore, we are instructed to consider other factors including the consequences of a particular interpretation, 1 Pa.C.S. § 1921(c)(6), and the object to be obtained. 1 Pa.C.S. § 1921(c)(4).
Subsequent to the United States Supreme Court's recognition of an employee's Weingarten right, the National Labor Relations Board mapped the contours of that right. With respect to an employee's choice of representative, the National Labor Relations Board has concluded that an employee has the right to choose his or her union representative for attendance during the investigatory interview if the union representative is reasonably available and absent extenuating circumstances. See Anheuser-Busch, Inc. and International Brotherhood of Teamsters, Local Union No. 1149, 337 NLRB 3 (2001), aff'd, 338 F.3d 267 (4th Cir.2003); GHr Energy Corp. v. Oil, Chemical and Atomic Workers International Union, 294 NLRB No. 76, 294 NLRB 1011, 1989 WL 224136 (1989); Montgomery Ward & Co. v. Joseph F. Steele, 273 NLRB 1226, 1227, 273 NLRB No. 154 (1984). The National Labor Relations Board's recent decision in Anheuser-Busch, is particularly instructive. In Anheuser-Busch, an employee was confronted with an investigatory interview. The employee requested representation. The employer provided representation, but not the union representative chosen by the employee. An administrative law judge found that the requested representative had been available, and thus, that the employer had violated the employee's Weingarten rights. The National Labor Relations Board affirmed on appeal. While recognizing that early decisions by the National Labor Relations Board denied the right of an employee to choose a Weingarten representative, more recent decisions rejected such an approach and embraced the right to select a specific representative. By adopting the administrative law judge's decision, the National Labor Relations Board held: "[I]n a Weingarten setting, an employee has the right to specify the representative that he or she wants, and the employer is obligated to supply that representative absent some extenuating circumstances." Anheuser-Busch, Inc., 337 NLRB at 8. The Board previously noted, however, that when an employee requests a union representative who is unavailable, "the employer can deny the request and is not required to postpone the interview, secure an alternative representative, or otherwise take steps to accommodate the employee's specific request." Montgomery Ward & Co., 273 NLRB at 1227. Rather, the employee has the right and obligation to request an alternative representative. Id.
In Pennsylvania in 2002, the Board formally adopted the National Labor Relations Board's approach to employee choice of representative for purposes of Weingarten in Pennsylvania State Corrections Officers Ass'n. v. Commonwealth of Pennsylvania, 34 PPER ¶ 1 (Final Order 2002). Previously, however, at least two hearing examiners came to the same conclusion under PERA. District 1199P, SEIU v. Commonwealth of Pennsylvania, Department of Public Welfare, Norristown State Hospital, 32 PPER ¶ 32177 (Proposed Decision *551 and Order, 2001); AFSCME v. Commonwealth of Pennsylvania, Department of Corrections, Greene SCI, 32 PPER ¶ 32131 (Proposed Decision and Order, 2001).
We believe that the approach taken by the National Labor Relations Board and thereafter by our Board is proper and consistent with PERA. Furthermore, unlike the Commonwealth Court, we find no persuasive differences that would counsel against our adoption of the National Labor Relations Board's standard regarding a public employee's right to choose a representative of his or her own choosing under PERA. While the Commonwealth Court's primary rationale against the adoption of the federal standard is that a grievance and arbitration procedure is mandated under PERA but not under the NLRA, it is undeniable that such an alternative dispute resolution process is common in private sector labor affairs. Moreover, the public interest in both the private and public sectors are served by a process that encourages "getting to the bottom of the incident," at an early stage to avoid unwarranted discipline. Weingarten, 420 U.S. at 263, 95 S.Ct. 959. As offered by the Board, the policy behind an employee's choice of union representative could prevent the "governmental employer from expending tax dollars for unnecessary grievance/arbitration litigation and potentially costly back pay awards." Board's Brief at 26. Public sector employers and employees profit from the making of a fully informed decision prior to disciplining an employee. This benefit is only enhanced by an employee's choice of union representative. The situation sub judice sharpens the point. Here, Officer Vogel desired a union representative who was not only a union steward, but also an individual who had some experience in the type of conduct that was at issue in the interview.
We caution, however, that the employee's choice of representative is tempered by union representative's reasonable availability and the absence of extenuating circumstances. In recognizing this important exception, we believe that employers will not suffer in any way from affirming the standard embracing an employee's choice of union representative, and such standard, exercised within the boundaries noted above, will serve both employers and employees. 1 Pa.C.S. § 1921(c)(6).
Finally, unlike the Commonwealth Court, we find that an employee's choice of representative is consistent with the public policies underlying PERA, inter alia, the promotion of "orderly and constructive" and "harmonious" relationships between "all public employers and their employes. . . ." 43 P.S. § 1101.101; 1 Pa.C.S. § 1921(c)(4).
Based upon the above, we hold that the Weingarten right of an individual employee, that is, the right to obtain a representative to accompany the employee during an interview when the employee reasonably fears that discipline may be imposed by the employer, includes the right to have the union representative of his or her choice, if the assisting union representative is reasonably available and absent extenuating circumstances.[12]
This does not end our inquiry. The Commonwealth, while disagreeing with the right of an employee to choose his or her union representative for purposes of Weingarten, also contends that the *552 Board's adoption of an employee's choice of representative pursuant to Weingarten constituted a change in the law and that prior decisions by the Board suggest that the Weingarten right did not include the right to select a representative of one's choice. In support of its position, the Commonwealth offers Boling v. Commonwealth of Pennsylvania, Department of Public Welfare, Mayview State Hospital, 16 PPER ¶ 16167 (Final Order, 1985) (Boling I) and Boling v. Commonwealth of Pennsylvania, Department of Public Welfare, Mayview State Hospital, 18 PPER ¶ 18096 (Final Order, 1987) (Boling II). According to the Commonwealth, in these decisions an employer was not required to honor the individual employee's request for a specific representative under Weingarten; rather, the focus was on the presence of a union representative designated by the union.
The Board retorts that there is no inconsistency in its decisions, but rather, Boling I and Boling II are factually distinguishable. The Board maintains that in Boling I, the Board dismissed an unfair labor practice charge by an employee when an employer summoned a union representative for the employee interview, but when the employee appeared at the interview with a union representative of his choice, the employer honored the employee's choice of representative. Furthermore, in Boling II, the employee's choice of representative was not available at the jobsite, and consistent with federal case law, the Board determined that when the requested representative was unavailable, the employee does not have a Weingarten right to be represented by that choice of representative. Thus, according to the Board, its prior decisions are in line with its decision in this appeal.
While the Board's prior case law in Boling I and Boling II is factually distinguishable from the matter sub judice, the Board's statements in those decisions regarding an employee's choice of representative are not the model of clarity and suggest that an employer need not provide the specific representative requested by the employee if a union representative is available. Nevertheless, the Commonwealth's argument fails. Even assuming arguendo that prior Board case law recognized the right of an employee to exercise his Weingarten right, but left the choice of union representative with the union, here, the union's offer to obtain the representative chosen by the employee was rejected by the employer. Thus, in this case, as noted by Judge McCloskey in his dissent, the choice of union representation was not made by the employee or the union, but was ultimately decided by the employer. No decision by the Board supports this approach to Weingarten.
Turning to the application of our holding to the facts of the case, we find that the Commonwealth Court erred when it found that the Commonwealth did not commit an unfair labor practice when it denied Officer Vogel his choice of representative. Officer Vogel requested that Officer Panko, a union steward who had some experience regarding allegations of tardiness, be present during the investigatory interview and Officer Panko was found to be reasonably available based upon Officer Lennert's assertion that he would relieve Officer Panko to attend the interview. Captain Soroko denied this request. Instead, Captain Soroko instructed Officer Lennert to attend the interview. This resulted in the employer choosing Officer Vogel's Weingarten representative in violation of Officer Vogel's rights under Weingarten.
For the reasons stated above, the order of the Commonwealth Court is hereby reversed.
*553 Justice NEWMAN did not participate in the decision of this matter.
Justices CASTILLE, SAYLOR, EAKIN and BAER and Justice BALDWIN join the opinion.
NOTES
[1] National Labor Relations Board v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975).
[2] Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. §§ 1101.101-1101.2301.
[3] Captain Soroko's first name does not appear of record.
[4] Section 1201 of PERA, 43 P.S. § 1101.1201, provides in relevant part:

(a) Public employers, their agents or representatives are prohibited from:
(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
* * *
(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate bargaining unit, including but not limited to the discussing of grievances with the exclusive representative.
Id. § 1101.1201(a)(1), (5).
[5] 29 U.S.C. § 151 et seq.
[6] Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. §§ 211.1-211.13.
[7] Act of June 24, 1968, P.L. 237, No. 111, as amended, 43 P.S. §§ 217.1-217.10.
[8] As the interpretation of the nature of rights under PERA constitute questions of law, our standard of review is de novo and our scope of review is plenary. Buffalo Twp. v. Jones, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).
[9] This understanding that PERA grants individual employee rights and that all rights under PERA are not vested with a union, is entirely consistent with the National Labor Relations Board and United States Supreme Court's interpretation of the NLRA, a statute that is in most respects identical to PERA. See generally THE DEVELOPING LABOR LAW 397 (Patrick Hardin and John E. Higgins, Jr. eds., 4th ed. 2005).
[10] We also note that neither party disputes this conclusion.
[11] When considering an agency's interpretation of a statute that it is charged with implementing and enforcing, we afford substantial deference to that interpretation. In re Nomination Petition of Timothy J. Carroll, 586 Pa. 624, 896 A.2d 566, 581 (2006). "Thus, our courts will not disturb administrative discretion in interpreting legislation within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action." Winslow-Quattlebaum v. Maryland Insurance Co., 561 Pa. 629, 752 A.2d 878, 881 (2000). When an administrative agency's interpretation, however, is inconsistent with the statute itself, or when the statute's meaning is unambiguous, such an administrative interpretation carries little weight. Carroll, 896 A.2d at 581.
[12] At least one other state court has considered this issue and has found the employee to have a right of choice of union representative in a Weingarten situation. See Upland Police Officers Ass'n. v. City of Upland, 111 Cal. App.4th 1294, 4 Cal.Rptr.3d 629 (Cal.App. 2003).